## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 11 2018, 7:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:
L.B. (Minor Child),

and

W.N. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

June 11, 2018

Court of Appeals Case No.
18A-JT-273

Appeal from the White Circuit Court

The Honorable Robert W. Thacker, Judge

Trial Court Cause No.
91C01-1708-JT-15

**Baker, Judge.**

[1] W.N. (Father) appeals the trial court's order terminating the parent-child relationship between Father and L.B. (Child). Father argues that the evidence does not support the termination. Finding the evidence sufficient, we affirm.

## Facts

[2] Child was born on December 5, 2013, to B.B. (Mother) and Father.[1] Father was incarcerated when Child was born. Child was born prematurely and spent extended time in the hospital, but Mother failed to participate in her treatment. As a result, Child was found to be a Child in Need of Services (CHINS). The parents participated in services and the case closed in September 2015, when Child was twenty-one months old.

[3] On June 15, 2016, the Department of Child Services (DCS) investigated new allegations of abuse or neglect, discovering that the parents had resumed using drugs, that the family was homeless, and that there was domestic violence between the parents. DCS removed Child from the parents' care and custody and placed her with a paternal aunt. DCS filed a petition alleging that Child was a CHINS. Following a factfinding hearing, on September 23, 2016, the trial court found Child to be a CHINS based on multiple incidents of domestic violence in the presence of Child and a minor sibling[2] and on the parents' active drug use.

---

[1] Mother's parental rights were also terminated but she did not appeal that order.

[2] Mother has two children, but the other child is not a party to this case.

[4] Subsequently, the trial court ordered Father to participate in a substance abuse assessment, random drug screens, supervised visits, and case management. The purposes of case management were to achieve housing stability, provide assistance attending visitation, and to counsel and educate the parents about domestic violence and its effects on children. Father did not begin or complete any of these services.

[5] Father completed only three drug screens during the CHINS case, and all three were positive for methamphetamine. He refused or failed to screen at any other time during the case. He never completed the ordered substance abuse assessment.

[6] Father was arrested and incarcerated from February 8 to March 13, 2017, in Pulaski County. He was arrested again and incarcerated from May 23 until October 2017, in Tippecanoe County; he was transferred back to Pulaski County in October 2017. The charges in both counties were methamphetamine-related.[3] During the times he was not incarcerated, he had three different addresses and for a period of time reported being homeless.

---

[3] Father challenges the trial court's factual findings regarding the pending charges. The trial court found that he was facing domestic violence-related charges, but it appears that all charges were instead drug-related. Additionally, the trial court found that Father was facing a lengthy prison term because he had made an offer to plead guilty in one of the drug-related cases. But at the time of the termination hearing, plea negotiations were ongoing and he had not yet admitted to any of the pending charges. We agree with Father that these findings were erroneous, but find that the errors have no bearing on the outcome of this appeal.

[7]     The first referral for visits with Child was during August and September 2016. The parents failed to show, and thereafter, they were required to call to confirm each visit. That occurred only once. At that time, Child was delivered a few minutes late, and Father became so verbally abusive and threatening to the visitation supervisor and others present that the visit was cancelled. Visits were re-referred and Father missed all but one visit through the end of December. He then had one visit on March 30, 2017, and had no visits after that time, nor does the record show that he tried other means to maintain a relationship with Child, such as phone calls, cards, and letters. Therefore, throughout the entire case, he has visited with Child only twice.

[8]     At a May 11, 2017, permanency hearing, which Father failed to attend, the trial court found that Father was homeless, had only visited Child once since February, and had tested positive for methamphetamine on May 2, 2017. The trial court also found that Child had been experiencing emotional trauma as a result of visits with the parents. The trial court changed Child's permanency plan to adoption.

[9]     On August 4, 2017, DCS filed a petition to terminate the parent-child relationship. A fact-finding hearing occurred on November 29, 2017, and on December 27, 2017, the trial court entered an order granting DCS's petition. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[10] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[11] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A)    that one (1) of the following is true:
>
> > (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

>    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

>    (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

> (B)    that one (1) of the following is true:

>    (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

>    (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

>    (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C)    that termination is in the best interests of the child; and

> (D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

## II. Remedy of Reasons for Removal

[12] Father first argues that the trial court erred by finding that there is a reasonable probability that the conditions resulting in Child's removal will not be remedied. The reasons that Child was originally removed from Father's care and custody were drug use, unstable housing, and domestic violence.

[13] During the CHINS case, Father continued to use methamphetamine. He refused or failed to provide many requested drug screens, and all the screens he provided were positive for methamphetamine. He failed to complete a substance abuse assessment. At the time of the termination hearing, he was facing methamphetamine-related charges in two different counties. As for housing, when Father was not in jail, he had multiple addresses and reported being homeless for a period of time. And as for domestic violence, while the record does not contain details of the prior incidents, Father was ordered to participate with case management, in part, to address domestic violence. He failed to participate with that service.

[14] In sum, over the course of the CHINS case, Father did not participate with court-ordered services designed to remedy the reasons for Child's initial removal, nor did he make any progress on any of these issues. Under these circumstances, the trial court did not err by finding that there is a reasonable

probability that the conditions resulting in Child's removal will not be remedied.[4]

# III. Best Interests

Finally, Father argues that the trial court erred by finding that termination is in Child's best interests.

Child began attending counseling in March 2017, when she was three and one-half years old. She has many emotional and behavioral issues, including symptoms of attachment disorder and post-traumatic stress disorder. Her behaviors show her to be at increased risk of developing additional disorders, including conduct disorder, hyperactivity, and emotional distress disorder. Child's problems were exacerbated by visits with her parents; once contact with her parents ended, she began to show improvement. Her emotional issues are most likely related to the abuse and neglect she experienced while in her parents' care.

Stability and predictability are essential for treatment of Child's behavioral and emotional problems, but the evidence in the record shows that Father is unable or unwilling to provide stability and predictability. His ongoing drug use, his

---

[4] Father also argues that the evidence does not support the trial court's conclusion that continuation of the parent-child relationship poses a threat to Child's well-being. Because that prong and the prong regarding remedy of reasons for removal are phrased in the disjunctive, we need not and will not consider this argument. We note briefly, however, that given the evidence we will explore in the section regarding Child's best interests, we would have little difficulty concluding that the evidence supports the trial court's conclusion on this issue.

refusal to participate with services to ameliorate substance abuse and domestic violence issues, his multiple incarcerations, and his inability to maintain stable housing, establish a pattern of unstable and unpredictable behavior. This lifestyle would be detrimental to Child's well-being.

[18] Moreover, Father failed to maintain a bond with Child. When he was not incarcerated, he failed to attend visits regularly—he has attended only two visits since she was removed. He also failed to maintain other types of contact with Child, such as cards, letters, or phone calls. Father initially reported that work interfered with his ability to attend visits, but he was able to transport Mother to her visits, which occurred at similar times. Additionally, the Family Case Manager (FCM) offered to meet with Father after hours and on weekends to facilitate visits, but Father never contacted her. He has also not shown a willingness or ability to learn about Child's special emotional needs or to develop the parenting skills needed to meet those needs.

[19] Child's Guardian ad Litem and the FCM testified that in their respective opinions, termination is in Child's best interests. She is doing well in her relative placement, and that caregiver plans to adopt her.

[20] Father argues that termination is premature, that he has completed some services while incarcerated, that he has always been a good provider for his family, and that he now plans to participate in court-ordered services. These arguments amount to requests that we reweigh the evidence and second-guess the trial court's assessment of witnesses, which we may not do.

[21] We find that the evidence supports the trial court's conclusion that termination of the parent-child relationship is in Child's best interests.

[22] The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.